Robert Chalfant (State Bar No. 203051)
**LAW OFFICE OF ROBERT CHALFANT**
5701 Lonetree Blvd., Suite 312
Rocklin, California 95765
Telephone:     (916) 647-7728
Facsimile:      (916) 930-6093
Email:           robert@rchalfant.com

Attorney for Plaintiff
CARLOS DAVID GUTIERREZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DAVID GUTIERREZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SACRAMENTO, OFFICER JONATHON NANGLE (385), OFFICER MICHAEL CASE (667), OFFICER COREY STACKHOUSE (1033), SERGEANT JOHN MORRIS and DOES 1 to 5,<br><br>　　　　　Defendants. | Case No.  2:22-cv-00802-KJM-JDP<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Date:　　　　March 31, 2023<br>Time:　　　　10:00 a.m.<br>Courtroom:　　3<br>Judge:　　　　Hon. Kimberly J. Mueller |

## I.  INTRODUCTION

Defendant Sacramento Police Department Officers assigned to the East Gang Enforcement Team have moved for summary judgment and assert the affirmative defense of qualified immunity. Plaintiff concurrently filed a motion for summary adjudication as to his unlawful detention, arrest and search. See ECF No. 21. Plaintiff submits the following points and authorities in opposition to Defendants' motion.

## II.  FACTUAL BACKGROUND

On or about November 16, 2021, around 3:20 p.m., Sacramento Police Department East Gang Enforcement Team ("EGET") Officers Nangle, Case and Stackhouse were on patrol in an

1

unmarked car in the area of Franklin Boulevard and 24th Avenue in the City of Sacramento. See Chalfant Decl., Exh. C (Nangle Deposition ("Depo.")), at 14:23-25, 15:1-2; Chalfant Decl., Exh. D, (Stackhouse Depo.), at 13:8-22, 16:7-23, 25:5-17. The role of the EGET is to initiate contact with people, and the officers were looking for people to pull over and investigate. Chalfant Decl., Exh. D, at 20:7-11.

The EGET officers were traveling southbound on Franklin Boulevard and observed a silver Nissan traveling northbound on Franklin Blvd. passing 24th Avenue. Id. at 25:5-17. The EGET Officers grew suspicious because the female driver of the silver Nissan had "red highlights in her hair" and "the passenger (Mr. Gutierrez) had their seat reclined real far back, had the hood pulled up and over." Id. at 26:3-25, 27:1-10; Exh. C, at 16:7-18. Officer Nangle acknowledged at deposition that having red hair, a reclined car seat and a passenger wearing a hoodie are not crimes in California. Chalfant Decl., Exh. C at 17:10-15. The officers did not observe the vehicle commit any traffic violations and did not have any suspicion that its occupants had committed any crimes. Chalfant Decl., Exh. C at 31:14-23; Exh. D at 39:8-18. The occupants of the vehicle were out running errands. See Declaration of Carlos Gutierrez ("Gutierrez Decl."), filed in Support of Plaintiff's Motion for Summary Adjudication at para. 2.

The silver Nissan pulled into a window tinting business called Southside Tinting & Tunes ("Tint Shop"), at 4713 Franklin Boulevard and parked. See Gutierrez Decl., at para. 3 and 4. After the vehicle parked, Mr. Gutierrez exited the vehicle with his backpack, walked to the entrance of the Tint Shop and entered the building. Id. at para. 5 and Exhibit A attached thereto (video from Tint Shop of Mr. Gutierrez walking into business).

At the time Mr. Gutierrez entered the Tint Shop, Officers Nangle, Case and Stackhouse had not made contact with the driver of the vehicle. See Separate Statement of Disputed Material Facts filed in Opposition to Defendants' Motion ("SSF") No. 1. At the time that Mr. Gutierrez entered the Tint Shop, Officers Nangle, Case and Stackhouse had not stopped the vehicle and had not activated their vehicle's sirens or flashing lights or done anything to signify they were stopping the vehicle. SSF No. 2. At the time when Officers Nangle, Case and Stackhouse pulled their vehicle behind the vehicle that Mr. Gutierrez had exited, they had no information that

anyone in the vehicle had committed a crime or done anything illegal. SSF No. 3. Officer Nangle, Case and Stackouse had no evidence that any criminal activity had taken place that day prior to turning on their vehicles' flashing lights. SSF No. 4. Officers Nangle, Case and Stackhouse did not follow the silver Nissan into the Tint Shop parking lot. Instead, they passed by the parking lot and subsequently performed an illegal U-turn on Franklin Blvd. to harass and investigate the occupants of the silver Nissan. See Chalfant Decl., Exh. D, at 53:8-11.

After Mr. Gutierrez had entered the business, Officers Nangle, Case and Stackhouse drove their unmarked vehicle into the parking lot, parked their vehicle behind the silver Nissan and turned on their flashing lights. See Gutierrez Decl., and Exhibit A attached thereto. Mr. Gutierrez was inside the Tint Shop when Officer Nangle and Officer Case came running into the business. See Gutierrez Decl., at para. 3-5; SSF No. 5; and Defendants Separate Statement of Undisputed Material Facts ("UMF") No. 12. Officer Nangle had made the decision that he was going to detain Mr. Gutierrez once Officer Nangle had walked into the store. SSF No. 8. Officer Nangle and Officer Case detained Mr. Gutierrez inside the Tint Shop. Id. Officer Nangle wanted Mr. Gutierrez to exit the store and talk to officers so they could "investigate what he was doing inside the store." SSF No. 6. Officer Nangle knew that Mr. Gutierrez had the right to refuse consent and not speak with Officer Nangle. SSF No. 7. Mr. Gutierrez did not consent to being detained by Officer Nangle. SSF No. 8.

At the time that Officer Nangle detained Mr. Gutierrez, he had no evidence that Mr. Gutierrez had committed a crime. SSF No. 10. Officer Nangle had not seen the driver of the vehicle or Mr. Gutierrez doing what officers describe as "furtive movements" inside of the vehicle where it appeared the occupants of the vehicle were moving items or exchanging contraband. SSF No. 11. Mr. Gutierrez was not on probation or parole on November 16, 2021. SSF No. 12.

Officer Nangle informed Mr. Gutierrez one minute into his interaction with him that he was going to search Mr. Gutierrez's backpack. SSF No. 13. Officers Nangle, Case and Stackhouse all came together directly prior to searching Mr. Gutierrez's backpack and came to the decision that they had legal justification to search the backpack. SSF No. 14. Mr. Gutierrez

3

repeatedly informed Officers Nangle, Case and Stackhouse that he did not consent to a search of his backpack. SSF No. 15.

Prior to searching Mr. Gutierrez's backpack, Officer Nangle and Officer Case went "hands on" with Mr. Gutierrez, grabbing him by the wrists and arms, and forcing Mr. Gutierrez to exit the store. SSF No. 16. Mr. Gutierrez was threatened with physical assault if he did not comply. SSF No. 17. After taking Mr. Gutierrez out of the building by grabbing him and pulling him, Officer Nangle and Officer Case put Mr. Gutierrez in handcuffs and sat him on the curb. SSF No. 18.

Officer Nangle had no evidence that Mr. Gutierrez had committed a crime prior to searching his backpack SSF No. 19. Mr. Gutierrez did not consent to his backpack being searched and repeatedly informed officers that he did not consent to being searched. SSF No. 20. Officer Nangle and Officer Case searched Mr. Gutierrez's backpack by unzipping the closed main compartment. SSF No. 21. Officer Nangle never considered that he should seize the backpack and apply for a warrant to search the backpack prior to the search. SSF No. 22. After searching Mr. Gutierrez's backpack, Plaintiff was arrested and transported to jail. SSF No. 23.

Sergeant Morris was the supervisor on scene during the incident on November 16, 2021, and arrived within 3 minutes of the call being reported. SSF No. 24 and 25. Sergeant Morris never objected to the detention of Mr. Gutierrez, or to the search of Mr. Gutierrez's backpack. SSF No. 26. Sergeant Morris never objected to anything the officers were doing that day. SSF No. 27.

### III.   ARGUMENT

**A.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION ALLEGING AN UNREASONABLE SEIZURE AND EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT.**

Defendants move for summary judgment on the grounds that the officers: "(1) had reasonable suspicion to detain Plaintiff; and (2) Officer Nangle acted with objectively reasonable force in detaining Plaintiff." See ECF No 22-1, at 11:21-23. Both grounds fail and their motion should be denied.

**1.   Defendants Did Not Have Reasonable Suspicion to Detain Plaintiff or**

**Probable Cause to Arrest**

The parties agree that officers must have reasonable suspicion that an individual is engaged in criminal activity prior to detaining that individual. See ECF No. 22-1, at 12:1-3. The Fourth Amendment permits the police to stop and briefly detain a person for investigative purposes if they have reasonable suspicion that criminal activity is occurring. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Officers have reasonable suspicion to stop a person if based on the totality of the circumstances, the officers have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). These "articulable facts" that form "the basis of a reasonable suspicion are 'measured against an objective reasonable man standard, not by the subjective impressions of a particular officer.'" *Nicacio v. U.S. I.N.S.*, 797 F.2d 700, 702-03 (9th Cir. 1985) overruled in part on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). The Fourth Amendment also prohibits an officer from making an arrest without probable cause. *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir. 1984).

Here, the undisputed facts show that Officers did not have a "particularized and objective basis" for detaining Plaintiff or probable cause to arrest. Officer Nangle concedes that having red hair, riding in a vehicle with your seat reclined and having your hoodie pulled up are not criminal acts in California. Chalfant Decl., Exh. C at 17:10-15. Plaintiff was not on probation or parole on November 16, 2021. SSF No. 12. At the time when Officers Nangle, Case and Stackhouse pulled their vehicle behind the vehicle that Mr. Gutierrez had exited, they had no information that anyone in the vehicle had committed a crime or done anything illegal. SSF No. 3. At the time that Officer Nangle and Officer Case detained Mr. Gutierrez inside the Tint Shop, the officers had no evidence that Mr. Gutierrez had committed a crime. SSF No. 10. Mr. Gutierrez did not consent to being detained by Officers at any time during his interaction with Officers on November 16, 2021. SSF No. 8. The officers used force to physically remove Plaintiff from the Tint Shop and he was threatened with assault and battery if he did not comply. See Plaintiff's SSF Nos. 16 and 17. The use of force converted the unlawful detention into an unlawful arrest without probable cause.

5

Defendants assert that once the Officers contacted Plaintiff inside the store "he became defensive stating that he was not on probation and not subject to search and seizure and refused to step outside." See ECF No. 22-1, at 14:17-19, citing UMF No. 18. Plaintiff had the constitutional right to refuse to comply with officer's unlawful requests. However, the officers, either not understanding or caring about constitutional rights, continued with their harassment, unlawful investigation and Fourth Amendment violations.

The Supreme Court has "consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991); see also *Florida v. Royer*, 460 U.S. 491, 497-98 (1983) ("The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way."); *Mackinney v. Nielsen*, 69 F.3d 1002, 1006 (9th Cir. 1995) ("It is well established under California law that even an outright refusal to cooperate with police officers cannot create adequate grounds for police intrusion without more."); *People v. Bower*, 24 Cal.3d 638, 649 (1979) ("this court has held that an outright refusal to cooperate with police officers cannot create adequate grounds for an intrusion which would otherwise be unjustifiable"). Plaintiff did not consent to being detained by the EGET Officers and the unlawful detention by Officers violated his civil rights.

Officer Nangle wanted Mr. Gutierrez to exit the store so that he could "investigate what he (Mr. Gutierrez) was doing inside the store." SSF No. 6. But "the [F]ourth [A]mendment does not permit the police to detain a suspect merely to investigate." *Kanekoa v. City & County of Honolulu*, 879 F.2d 607, 612 (9th Cir. 1989) ("[I]t is inimical to the [F]ourth [A]mendment for the police to arrest now, and investigate later for probable cause.").

Viewing the evidence in the light most favorable to Plaintiff, there was no lawful justification for detaining Mr. Gutierrez while he was in the Tint Shop, and Defendants' Motion should be denied.

**2.      Defendants Are Not Entitled to Qualified Immunity**

"[B]ecause qualified immunity is an affirmative defense the burden of proving it lies with the defendant just as the burden of pleading the defense lies on the defendant[.]" *Benigni v. City*

6

*of Hemet*, 879 F.2d 473, 479 (9th Cir. 1988); *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

A qualified immunity defense has two prongs: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Courts have "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Id. at 236 (overruling in part *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). Plaintiff has already addressed the first prong, the constitutional rights violated, *supra*, and therefore proceeds to the second prong.

It was clearly established law since the 1970s that law enforcement officers must have "reasonable suspicion" that an individual is engaged in criminal activity in order to detain that individual. *Terry v. Ohio*, 392 U.S. 1, 23-27 (1968); *Delaware v. Prouse*, 440 U.S. 648, 663 (1977).

Defendants assert that they are entitled to qualified immunity on the ground that existing case law "did not preclude" the officers from believing their conduct was lawful. See ECF No. 22-1, at 11:23-28. This appears to be an argument that no case has specifically informed defendants that detaining someone without reasonable suspicion simply based upon their prior proximity to an alleged probationer is unlawful. Although the inquiry is undertaken in the specific context of the case considered, the fact that no case has found a constitutional violation under the exact same facts alleged does not imply that the law is not clearly established. See *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances."). "Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001).

At the time that Officers detained Plaintiff, they had no evidence that Plaintiff was

engaged in any sort of criminal activity. See SFF Nos. 3, 10, and 12. Officers could not have believed that their conduct was lawful as the Officers admit that they had no specific and articulable facts or evidence that Plaintiff was engaged in criminal activity. It should have been clear to the Officers that detaining an individual without reasonable suspicion of criminal activity or probable cause to arrest is unconstitutional.

### 3. Officer Nangle Used Excessive Force on Plaintiff

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, (1989). Accordingly, law enforcement may use objectively reasonable force to carry out investigatory stops. See *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014). Law enforcement officers making an arrest may use only that amount of force that is objectively reasonable in light of the facts and circumstances confronting the officer. ld. at 397. In analyzing an excessive force claim, the court must first examine the quantum of force used against the individual. *Chew v. Gates*, 27 F. 3d 1432, 1440 (9th Cir. 1994). Next, the court must assess the importance of the governmental interests involved. Id. The three factors pertinent to this inquiry are: (1) the severity of the crime the suspect is believed to have committed; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. "[T]he most important single element of the three specified factors [is] whether the suspect poses an immediate threat to the safety of the officers or others." *Chew*, 27 F.3d at 1441; citing *Graham*, 490 U.S. at 396.

The quantum of force used by Officer Nangle was severe as it involved grabbing Plaintiff's arms and hands, dragging Plaintiff from the Tint Shop against his will, threatening Plaintiff with assault and battery if he did not comply, handcuffing Plaintiff and forcing him to sit outside the store. See SSF Nos. 16-18. Plaintiff posed no threat to the Officers. He was inside of a store minding his own business when aggressively confronted by Officers Case and Nangle. See SSF No. 4-5. The Officers had no information that he was engaged in criminal activity. See

1  Plaintiff's SSF No. 10-11, and 16-19. Plaintiff was not actively resisting arrest or attempting to
2  evade Officers. Plaintiff was simply informing Officer Nangle that his constitutional rights were
3  being violated, that he was not on probation or parole and that he did not consent to the Officer's
4  unlawful acts. See Plaintiff's SSF Nos. 7, 8, 10, 12, 15 and 20.
5
6  There is a triable issue of fact as to whether Officer Nangle was entitled to use force to
7  detain and remove Plaintiff from the store against his consent and where he was lawfully present.
8  Defendant's motion for summary judgment and/or adjudication should be denied as to Plaintiff's
9  claim for excessive force against Officer Nangle.

**B.    DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S SECOND CAUSE OF ACTION.**

Defendants argue that "based on the totality of the circumstances, it was objectively reasonable for officers to search Plaintiff's backpack based on his presence in a probationer's vehicle where unlawful items could have been concealed upon becoming aware of police activity." See ECF No. 22-1, at 17:20-23. Because Defendants failed to obtain a warrant for the search of Plaintiff's backpack, the search was unreasonable, unless it falls within a narrow exception to the warrant requirement. There is no established exception to the warrant requirement that authorizes the search conducted here.

First, it is important to point out that Defendants have failed to present any evidence in this case that Erika Ruvalcaba was on formal searchable probation on the day of the incident, such as a minute order or sentencing order from a court. Instead, they rely on hearsay statements from Officer Nangle that Officers "learned that she was on formal searchable probation" as her car pulled into a parking lot. See UMF No. 9. Defendants have never disclosed any record in this action that would show Ms. Ruvalcaba was on probation as alleged by the Officers, and what terms and conditions of probation a court allegedly imposed.

Defendants mistakenly rely on *People v. Cervantes*, 11 Cal.App.5th 860 (2017), as justification for the search of Mr. Gutierrez. What Defendants fail to point out to the Court about *Cervantes*, is that it represents a narrow state law exception to the warrant requirement for the

9

search of a vehicle involving a passenger on searchable probation. Id. at 863. In *Cervantes*, the vehicle was pulled over for traffic code violations, the occupants of the vehicle were detained lawfully inside of the vehicle, the passenger in the vehicle gave a false name and when her real name was discovered it was determined that she had a felony warrant and a "valid Fourth waiver." Id. The officers then searched *the vehicle* and discovered narcotics. Id.

The court analyzed the relevant legal principles that apply and recognized that warrantless searches are unreasonable under the Fourth Amendment unless conducted "pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant." Id. at 867: Citing *People v. Schmitz* (2012) 55 Cal.4th 909, 916; See also *Katz v. United States*, 389 U.S. 347, 357 (1967) (emphasizing that these exceptions are "few," "specifically established," and "well-delineated.") The Court in *Schmitz* had recognized an exception to the warrant requirement for the search of the interior of a *vehicle* when the passenger was on parole. Id. at 924. This was based upon the driver's "reduced expectation of privacy with regard to an automobile." Id. The Court in Schmitz held that "*a vehicle search* based on a passenger's parole status may extend beyond the parolee's person and the seat he or she occupies," but is "confined to those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity" Id. at 926; Italics added. The searchable area includes "items of personal property if the officer reasonably believes that the parolee owns the items or has the ability to exert control over them." Id. at p. 930.

Here, Defendants are attempting to apply the narrow vehicle search exceptions to the warrant requirement that applied in *Cervantes* and *Schmitz* to individuals that (1) are not on probation or parole; (2) are not detained by officers during lawful traffic stops; (3) and that are subjected to a search of their private belongings on their person after having exited a vehicle.

The vehicle in this case was never subjected to a traffic stop by the Officers. See SSF No. 1-4. Mr. Gutierrez was not or probation or parole. See SSF No. 12. Mr. Gutierrez was not inside of the vehicle when detained. See SSF No. 5. The officers did not search Mr. Gutierrez's belongings while searching the vehicle; they searched the backpack that he was wearing inside of

10

the Tint Shop. See Plaintiff's SSF Nos. 1-22. Officers simply chased down an individual located in a public store, detained him, arrested him and searched his backpack without his consent. The vehicle search exception to the warrant requirement present in *Cervantes* and *Schmitz* does not apply on these facts.

Under federal law, the right to conduct a probation or parole search is not unlimited and excludes items in the vehicle that obviously belong to persons not on probation or parole. In *United States v. Mataafa*, 2008 U.S. Dist. LEXIS, at *3 (E.D. Cal. Dec. 1, 2008), the Court held that a male driver's parole status did not authorize the search of a purse left in the backseat. Id. The Ninth Circuit has recognized that a purse owner has a reasonable expectation of privacy in the contents of their purse. Id.; citing *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993).

The same analysis applies to backpacks as they are "so closely associated with one's person that a search of them must be supported by a warrant which satisfies the particularity requirement, or by one of the exceptions to the warrant requirement." *United States v. Robinson*, 833 F.2d 777, 784 (9th Cir. 1987).

In *Robinson*, a warrant authorized the search of a residence as well as vehicles. Id. at 783. The individual challenging the search of her backpack was an individual who had just exited the residence to be searched and where the officers "had probable cause to believe that criminal activity was afoot." Id. at 784. The officers had no indication that the individual was a person with a criminal history or posed a threat to officers. Id. The Court found that officers lacked a warrant and none of the exceptions to the warrant requirement applied to support a search. Id. The Court stated that if "the officers had probable cause to believe that the backpack contained contraband, they should have obtained a warrant which described the backpack and which would have authorized a search of its contents." Id. at 786; Citing *Arizona v. Hicks*, 480 U.S. 321 (1987). The failure to secure a warrant violated the Fourth Amendment.

11

Defendants are asking this Court to create a new exception to the warrant requirement that allows them to search any individual previously seen in the presence of a probationer on the baseless assumption that illegal contraband may have been exchanged. That exception does not exist under federal law.

## C. SERGEANT MORRIS IS NOT ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S THIRD CAUSE OF ACTION.

Defendants correctly state that a supervisor can be liable under Section 1983 for "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." See ECF No. 22-1, at 18:11-14; Citing *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018.) Here, Sergeant Morris was present throughout almost the entire incident, and failed to object to anything his subordinates were doing. See SSF Nos. 24-27. Sergeant Morris knew and was aware that Officers had detained Plaintiff in a store against his consent, used force to grab him and drag him outside, and searched his belongings and backpack without a warrant. See Defendants UMF No. 21. Summary judgment should be denied as to Sergeant Morris.

## D. SUMMARY JUDGMENT SHOULD BE DENIED AS TO PLAINTIFF'S FOURTH CAUSE OF ACTION ALLEGING A BANE ACT VIOLATION.

Plaintiff was unlawfully detained, arrested, subjected to excessive force and searched by Officers. These violations occurred by way of "threats, intimidation or coercion." See SSF No. 15-18. Threats, intimidation and coercion are clearly shown by the body worn camera videos submitted by Defendants. Additionally, Plaintiff was threatened with assault and battery if he did not comply and the Officers used force against Plaintiff without his consent. See Plaintiff's SSF Nos. 16-18.

Defendants cite *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015) for the proposition that a plaintiff "in a search or seizure case must allege threats or coercion beyond the coercion inherent on a detention or search in order to recover under the Bane Act." See Plaintiff's

12

Motion, ECF No. 22-1, p.19:3-5. That is not a correct statement of federal law.

In 2018, the Ninth Circuit decided *Reese v. City of Sacramento*, 888 F.3d 1030 (9th Cir. 2018), which substantially clarified the legal standards that apply to Bane Act claims. The Ninth Circuit in *Reese* held that *Lyall's* independent coercion rule "only applies when the Plaintiff shows that the defendant negligently violated the Plaintiff's Constitutional rights, and that the coercion inherent in a Fourth Amendment violation could support a Bane Act claim if the coercion occurred with 'specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Sandoval v. City of Sonoma*, 912 F.3d 509, 519-520 (9th Cir. 2018); citing *Reese* at 1043, 1044 n.5 (quoting *Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766, 801 (2017).

Here, Plaintiff has provided evidence that Plaintiff was threatened with assault and battery if he did not comply and was forcibly removed from a store against his will and consent. See SSF Nos. 15-18. Plaintiff was subjected to excessive force by Officer Nangle. Id.

**E.   SUMMARY JUDGMENT SHOULD BE DENIED AS TO PLAINTIFF'S FIFTH CAUSE OF ACTION FOR ASSAULT AND BATTERY AGAINST OFFICER NANGLE.**

See Section A3, *supra*.

**F.   SUMMARY JUDGMENT SHOULD BE DENIED AS TO PLAINTIFF'S SIXTH CAUSE OF ACTION FOR FALSE ARREST/FALSE IMPRISONMENT.**

To prevail on a claim for false imprisonment, plaintiff must establish "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715, (1994) (internal citations omitted). An officer is not liable for false arrest "if the arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 511, (2006) (internal quotations omitted). See Section A1 and 2, *supra*. See also, Plaintiff's Motion for Summary Adjudication. Plaintiff was detained and arrested without

13

probable cause. See Plaintiff's SSF 3, 10, 16-18.

**G.  SUMMARY JUDGMENT SHOULD BE DENIED AS TO PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Defendants assert that they are entitled to immunity under Government Code Section 820.4 for their unlawful detention, arrest, use of force and search of Plaintiff. Triable issues of fact preclude summary judgment and/or adjudication of this claim as the Officers failed to exercise "due care" in the execution or enforcement of any law. Officers unlawfully detained and arrested Plaintiff, even though they had no facts or evidence that he was engaged in criminal activity. See Sections A1 and 2, *supra*. Officers unlawfully searched Plaintiff, even though they did not have a warrant and no exception to the warrant requirement existed. See Section A3, *supra*. The Officers grabbed Plaintiff, forced him to exit the Tint Shop against his will, and forced him to sit on a curb. The Officers threatened to assault Plaintiff if he did not comply. See Plaintiff's SSF Nos. 1-22.

Defendant Officers acts were outrageous and intended to cause Plaintiff emotional distress. The Officers acted with reckless disregard that Plaintiff would suffer emotional distress and their conduct was a substantial factor in causing Plaintiff emotional distress.

**IV.   CONCLUSION**

Plaintiff respectfully requests that Defendants Motion for Summary Judgment, or in the alternative, Summary Adjudication, be denied in its entirety.

Dated: March 3, 2023

                        LAW OFFICE OF ROBERT CHALFANT

                        By: /s/ Robert Chalfant
                            Robert Chalfant

                            Attorney for Plaintiff
                            CARLOS DAVID GUTIERREZ