Robert Chalfant (State Bar No. 203051)
LAW OFFICE OF ROBERT CHALFANT
5701 Lonetree Blvd., Suite 312
Rocklin, CA 95765
Telephone: (916) 647-7728
Facsimile:  (916) 930-6093
Email:        robert@rchalfant.com


Attorney for Plaintiff
CARLOS DAVID GUTIERREZ

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DAVID GUTIERREZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SACRAMENTO, et al.,<br><br>Defendants. | Case No. 2:22-cv-00802-KJM-JDP<br><br>**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS CONCERNING MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION**<br><br>Date:        March 31, 2023<br>Time:       10:00 a.m.<br>Courtroom:   3 |

Pursuant to E.D. Cal. L.R. 260, Plaintiff Carlos David Gutierrez submits the following responses and objections to Defendants City of Sacramento, Officer Jonathon Nangle, Officer Corey Stackhouse, Officer Michael Case and Sergeant John Morris's (collectively, "Defendants") Separate Statement of Undisputed Material Facts (ECF No. 22-2 [UMF]) in opposition to the motion for summary judgment and/or adjudication (ECF No. 22).

| # | DEFENDANTS'<br>UNDISPUTED MATERIAL FACTS &<br>SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES |
|---|---|---|
| 1. | On November 16, 2021, Sacramento Police | Disputed. Officers Nangle, Case and Stackhouse |

1

| | | |
|---|---|---|
| | East Gang Enforcement Team ("EGET") Officers Nangle, Case, and Stackhouse were on routine high-visibility patrol in the high crime area of Franklin Blvd. and 24th Avenue in South Sacramento.<br><br>Decl. of Grace L. Pak ("Pak" Decl."), filed concurrently, ¶ 2, Ex. A: Stackhouse Depo. 13:8-22; 24:10-14; Nangle Depo. 29:1-3; and Morris Depo. 37:9-10.  Pak Decl. ¶ 21, Ex. T- ICC 00:00 to 00:18 | were in an unmarked vehicle. See Chalfant Decl., Exh. C (Nangle Deposition ("Depo.")), at 14:23-25, 15:1-2; Chalfant Decl., Exh. D, (Stackhouse Depo.), at 13:8-22, 16:7-23, 25:5-17.<br><br>Objection: Irrelevant; Immaterial. Mere presence in an area known for high crime does not give rise to reasonable suspicion for a stop. *Brown v. Texas*, 443 U.S. 47, 52, (1979). Lacks foundation as to "high crime area". |
| 2. | Officer Stackhouse was driving on southbound Franklin Blvd in a black Ford Explorer patrol vehicle with Officer Nangle seated in the front passenger seat and Officer Case seated in the rear passenger seat.<br><br>Pak Decl. ¶ 3, Ex. B: Stackhouse Depo. 16:7-9; 36:9 and Nangle Depo. 15:22-24; 18:16-20. | Undisputed that officers were in a black Ford Explorer. Disputed that it was a regular patrol vehicle. Case and Stackhouse were in an unmarked vehicle. See Chalfant Decl., Exh. C (Nangle Deposition ("Depo.")), at 14:23-25, 15:1-2; Chalfant Decl., Exh. D, (Stackhouse Depo.), at 13:8-22, 16:7-23, 25:5-17. |
| 3. | Their vehicle was similar to other Sacramento Police Department patrol cars with lights and emergency sirens, but it did not have the police markings or badges on the side. The general appearance of the car made it very obvious that it was a patrol vehicle and based on officers' experience, their vehicles are very well known amongst the gang or criminal community.<br><br>Pak Decl. ¶ 4, Ex. C: Stackhouse Depo. 16:13-16; 17:10-13; 24:18-22. | Disputed. Officers Nangle, Case and Stackhouse were in an unmarked vehicle. See Chalfant Decl., Exh. C (Nangle Deposition ("Depo.")), at 14:23-25, 15:1-2; Chalfant Decl., Exh. D, (Stackhouse Depo.), at 13:8-22, 16:7-23, 25:5-17.<br><br>Objections. Speculative as to whether it was "very obvious" to third parties that it was a patrol vehicle. Hearsay, lacks foundation as to whether the vehicle was "very well known amongst the gang or criminal community." |
| 4. | The goal of the EGET team is to reduce gang-related crime, including firearm possessions, shootings, and robberies with a focus on getting guns off the street.  The team splits their time doing proactive, high-visibility patrols on the streets and working on more long-term investigations and writing search warrants.<br><br>Pak Decl. ¶ 5, Ex. D: Stackhouse Depo. 19:6-10; 14:3-7. | Disputed.<br><br>The role of the EGET is to initiate contact with people, and the officers were looking for people to pull over and investigate. Chalfant Decl., Exh. D, at 20:7-11.<br><br>Officers Nangle, Case and Stackhouse patrolled in an unmarked car. See Chalfant Decl., Exh. C (Nangle Deposition ("Depo.")), at 14:23-25, 15:1-2; Chalfant Decl., Exh. D, (Stackhouse Depo.), at 13:8-22, 16:7-23, 25:5-17. |

2

| | | |
|---|---|---|
| 5. | At approximately 3:17 p.m., officers observed a silver Nissan sedan driving northbound on Franklin Blvd with a female driver having bright red dyed hair and a front passenger occupant with a hood pulled up and over their head and the seat reclined so that the passenger's head was hidden behind the car's "B" pillar, which shielded the person from view.<br><br>Pak Decl. ¶ 6, Ex. E: Stackhouse Depo. 25:15-17; 26:10-24 and Nangle Depo. 16:2-20. | Undisputed.<br><br>Objection: immaterial; irrelevant. Officer Nangle acknowledged at deposition that having red hair, a reclined car seat and a passenger wearing a hoodie are not crimes in California. Chalfant Decl., Exh. C at 17:10-15. |
| 6. | Based upon the officers' training and experience, they recognized that red hair among females is often used to show affiliation with Norteno or Blood gang sets, which operate in that area.<br><br>Pak Decl. ¶ 7, Ex. F: Stackhouse Depo. 21:22-22:6 and Nangle Depo. 16:22-17:2. | Disputed. Officer Nangle acknowledged at deposition that having red hair, a reclined car seat and a passenger wearing a hoodie are not crimes in California. Chalfant Decl., Exh. C at 17:10-15.<br><br>Objection: immaterial; irrelevant. |
| 7. | Additionally, officers noted the passenger's reclined seat and hood because they have observed that amongst the criminal element, people sit back in their seats with a hood over their heads to make it harder for other rival gang members to see them and because the "B" pillar is somewhat bullet resistant.<br><br>Pak Decl. ¶ 8, Ex. G: Stackhouse Depo. 26:20-27:1 and Nangle Depo. 17:3-9. | Disputed. Officer Nangle acknowledged at deposition that having red hair, a reclined car seat and a passenger wearing a hoodie are not crimes in California. Chalfant Decl., Exh. C at 17:10-15.<br><br>Objections: immaterial; irrelevant; speculative; hearsay. |
| 8. | After noticing the vehicle, Officer Nangle immediately ran a DMV records check on the car, which showed that it was registered to Erika Ruvalcaba. He then ran Ms. Ruvalcaba's name in the Web KPF ("known person finder") system, found her photo, recognized her as the driver of the Nissan sedan, and obtained her detailed history. Pak Decl. ¶ 9, Ex. H: Nangle Depo. 19:13-15; 20:11-23; 25:12-13; 26:19-27:2 and Stackhouse Depo. 33:22-25. | Undisputed as to the DMV records check. Objection. Lacks authentication; hearsay; (F.R.C.P. 56 (c)(2)(fact not supported by admissible evidence). |
| 9. | Officers learned that she was on formal searchable probation just as her car quickly | Disputed as to Ms. Ruvalcaba's probation status and whether her car "quickly" pulled off into a |

3

| | | |
|---|---|---|
| | pulled off into the parking lot of a window tinting business.<br><br>Pak Decl. ¶ 10, Ex. I: Nangle Depo. 25:18-19; 27:5-12; 27:21-24 and Stackhouse Depo. 29:1-3. | parking lot. Pak Decl., para. 21 and Exh. T attached thereto (In-car camera video).<br><br>Objection: Hearsay; lacks foundation (F.R.C.P. 56 (c)(2)(fact not supported by admissible evidence). Defendants have offered no competent evidence to establish that Ms. Ruvalcaba was on formal searchable probation at the time of the incident. |
| 10. | Officer Stackhouse made a u-turn to catch up to Ms. Ruvalcaba's car and all three officers observed Plaintiff, who had been seated in the front passenger's seat, hastily exit the car with a red backpack and walk briskly towards the doors of the tint shop.<br><br>Pak Decl. ¶ 11, Ex. J: Nangle Depo. 30:6-10; 30:17-23 and Stackhouse Depo. 36:25-37:6; 54:22-23. | Disputed. Officers kept driving then performed an illegal u-turn on Franklin to initiate contact with the occupants of the silver Nissan and investigate. See Chalfant Decl., Exh. D, at 53:8-11. Plaintiff exited the car and walked into the tint shop. See Exhibit A attached to the declaration of Carlos Gutierrez. |
| 11. | Officers were familiar with such patterns of behavior involving probationers as they encountered it on a weekly basis and knew it was indicative of a probationer getting something out of their car.<br><br>Pak Decl. ¶ 12, Ex. K: Stackhouse Depo. 41:18-25. | Disputed. The officers did not observe the vehicle commit any traffic violations and did not have any suspicion that its occupants had committed any crimes. Chalfant Decl., Exh. C at 31:14-23; Exh. D at 39:8-18. At the time when Officers Nangle, Case and Stackhouse pulled their vehicle behind the vehicle that Mr. Gutierrez had exited, they had no information that anyone in the vehicle had committed a crime or done anything illegal. SSF No. 3.<br><br>Objection: Irrelevant; immaterial; lacks foundation as to being familiar with "such patterns of behavior." Immaterial. |
| 12. | Officers Nangle and Case jumped out of their vehicle to catch up with Plaintiff inside the store while Officer Stackhouse remained outside with Ms. Ruvalcaba.<br><br>Pak Decl. ¶ 13, Ex. L: Nangle Depo. 32:21-33:2 and Stackhouse Depo. 56:17-19; 66:3-4. | Undisputed. |
| 13. | When Officer Nangle entered the store with Officer Case, he observed that Plaintiff was making no effort to conduct business inside despite making statements to officers that he had an appointment.<br><br>Pak Decl. ¶ 14, Ex. M: Nangle Depo. 34:15-24; 35:5-13 and ¶ 18, Ex. Q: Nangle BWC 00:34-00:45; 03:47-03:54. | Disputed. Mr. Gutierrez had just walked into the store and was on his phone. Pak Decl. at Exh. M: Nangle Depo. 35:5-8. Nangle admits Mr. Gutierrez's conduct in the store was not criminal. Id. at 35:14-16. At the time when Officers Nangle, Case and Stackhouse pulled their vehicle behind the vehicle that Mr. Gutierrez had exited, they had no information that anyone in the vehicle had committed a crime or done anything illegal. SSF |

4

|  |  |  |
|---|---|---|
|  |  | No. 3. Officer Nangle, Case and Stackhouse had no evidence that any criminal activity had taken place that day prior to turning on their vehicles' flashing lights. SSF No. 4.<br><br>Objection: Irrelevant; immaterial. Mr. Gutierrez doesn't have to "conduct business" immediately after entering a store to avoid being detained by EGET officers. |
| 14. | Officers Case and Nangle informed Plaintiff they were detaining a probationer's car and that he had been observed by officers leaving Ms. Ruvalcaba's car with a backpack. Plaintiff denied getting out of Ms. Ruvalcaba's car and stated that he did not consent to being searched.<br><br>Pak Decl. ¶ 18, Ex. Q: Nangle BWC 00:39-03:08; ¶ 19, Ex. R: Case BWC 01:38-02:52. | Undisputed that Mr. Gutierrez did not consent to being searched.<br><br>Objection. Irrelevant; immaterial. |
| 15. | Later, Plaintiff admitted to being in Ms. Ruvalcaba's car.<br><br>Pak Decl. ¶ 18, Ex. Q: Nangle BWC 04:48-05:10; ¶ 19, Ex. R: Case BWC 06:51-08:23 | Undisputed.<br><br>Objection: Irrelevant; immaterial. Plaintiff was unlawfully detained and asked to leave prior to making this statement. |
| 16. | Prior to the search of Plaintiff's backpack, Ms. Ruvalcaba told Officer Stackhouse that Plaintiff was "like [her] boyfriend", but that she did not know his last name. She also told Officer Stackhouse that they didn't have an appointment to get her windows tinted.<br><br>Pak Decl. ¶ 17, Ex. P: Stackhouse BWC 00:44-03:09; ¶ 15, Ex. N: Witness Statement of Erika Ruvalcaba from Sacramento Police Department Report GO#SA 2021-329962, p. 37. | Undisputed.<br><br>Objection: Irrelevant; immaterial. |
| 17. | This directly contradicted Plaintiff's statements to officers that he had an appointment at the business and that he had never been in Ms. Ruvalcaba's car.<br><br>Pak Decl. ¶ 18, Ex. Q: Nangle BWC 04:48-05:10; ¶ 19, Ex. R: Case BWC 06:51-08:23. | Objection: Irrelevant; immaterial. Plaintiff had been unlawfully detained. |
| 18. | Inside the store, Plaintiff became defensive with Officers Case and Nangle stating that he | Undisputed. |

5

| | | |
|---|---|---|
| | was not on probation and not subject to search and seizure and refused to step outside.<br><br>Pak Decl. ¶ 22, Ex. U:  Nangle Depo. 34:5-8; ¶ 18, Ex. Q: Nangle BWC 00:39-02:30; ¶ 19, Ex. R: Case BWC 00:52:-02:28. | |
| 19. | Officers informed Plaintiff that he had been observed exiting a probationer's car and that it was highly likely that she could have placed something in his bag.<br><br>Pak Decl. ¶ 18, Ex. Q: Nangle BWC 00:39-01:17; ¶ 19, Ex. R: Case BWC 01:06-01:18. | Undisputed as to officers informing Plaintiff that he had been observed exiting Ms. Ruvalcaba's car. Disputed that officers had a sufficient factual basis for detaining, arresting or searching Plaintiff. Nangle admits to having zero evidence that Plaintiff had committed a crime prior to the detention, arrest or search and plaintiff was not on probation or parole.<br><br>See Plaintiff's SSF 10, 11, 12, 13 and 19. |
| 20. | Officers observed Plaintiff place his hands in his front pocket, so they grabbed Plaintiff's wrists and pulled them out due to safety concerns.  Officers informed Plaintiff he was being detained and Officer Nangle placed his hand on Plaintiff's wrist and forearm and escorted him outside.<br><br>Pak Decl. ¶ 23, Ex. V: Nangle Depo. 41:6-18; ¶ 18, Ex. Q: Nangle BWC 01:57-02:35; ¶ 19, Ex. R: Case BWC 01:55-02:30. | Undisputed that Officer Nangle used force against Plaintiff and removed Plaintiff from the store. Plaintiff was also threatened with physical assault if he did not comply.<br><br>See Plaintiff's SSF 16, 17 and 18. |
| 21. | Sergeant Morris arrived shortly after officers detained Plaintiff and was present during the search of Plaintiff's backpack.<br><br>Pak Decl. ¶ 24, Ex. W: Morris Depo. 12:25-13:1 and ¶ 20, Ex. S: Morris BWC 00:40-14:08. | Undisputed. |
| 22. | Officer Nangle observed that Plaintiff tensed his muscles as if to resist, but once outside, Plaintiff dropped down on the curb when officers asked him to sit and was subsequently handcuffed.<br><br>Pak Decl. ¶ 25, Ex. X: Nangle Depo. 42:3-6; 42:13-22; ¶ 18, Ex. Q: Nangle BWC 02:12-06:37; ¶ 19, Ex. R: Case BWC 02:27-06:37. | Disputed. Plaintiff objected to being assaulted and battered by Officer Nangle and Officer Case. Officers used force to remove Plaintiff from the tint shop, forced him outside and forced him to sit on the curb against his will. See Pak Decl. Ex. X: Nangle Depo. 42:3-6; 42:13-22; ¶ 18, Ex. Q: Nangle BWC 02:12-06:37; ¶ 19, Ex. R: Case BWC 02:27-06:37. |
| 23. | The officers' body worn camera shows Plaintiff gesturing and gesticulating with his hands as Officer Nangle's hands were on Plaintiff's wrists. | Disputed. Pak Decl. ¶ 25, Ex. X: Nangle Depo. 42:3-6; 42:13-22; ¶ 18, Ex. Q: Nangle BWC 02:12-06:37; ¶ 19, Ex. R: Case BWC 02:27-06:37. |

6

| | | |
|---|---|---|
| | Pak Decl. ¶ 18, Ex. Q: Nangle BWC 03:03-06:03; ¶ 19, Ex. R: Case BWC 03:00-06:03. | Objection: Irrelevant; immaterial. |
| 24. | Officer Nangle searched Plaintiff's backpack which uncovered a 9 mm stolen handgun. Defendant was then arrested and Mirandized and transported to jail.<br>Pak Decl. ¶ 18, Ex. Q: Nangle BWC 16:14-23:32; ¶ 19, Ex. R: Case BWC 16:15-23:40; ¶ 16, Ex. O: Officer Nangle Narrative from Sacramento Police Department Report GO#SA 2021-329962, p. 9-10. | Undisputed that Nangle searched Plaintiff's backpack. Disputed that Plaintiff was "then arrested" as he was previously arrested when removed from the store prior to being searched. See Plaintiff's SSF Nos. 16, 17 and 18.<br><br>Objection: Irrelevant; immaterial. |

Dated: March 3, 2023

Respectfully Submitted,

By: /s/ Robert Chalfant_____
    Robert Chalfant
    LAW OFFICE OF ROBERT CHALFANT

    Attorney for Plaintiff
    CARLOS DAVID GUTIERREZ

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANTS' UMF RE: MOTION FOR SUMMARY JUDGMENT**
*Gutierrez v. City of Sacramento,* United States District Court, Eastern District of California, Case No. 2:22-cv-00802-KJM-JDP