SUSANA ALCALA WOOD, City Attorney (SBN 156366)
SEAN D. RICHMOND, Senior Deputy City Attorney (SBN 210138)
srichmond@cityofsacramento.org
CITY OF SACRAMENTO
915 I Street, Room 4010
Sacramento, CA  95814-2608
Telephone:  (916) 808-5346
Facsimile:   (916) 808-7455

Attorneys for the CITY OF SACRAMENTO, OFFICER JONATHON NANGLE (385), OFFICER MICHAEL CASE (667), OFFICER COREY STACKHOUSE (1033), and SERGEANT JOHN MORRIS (3120)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DAVID GUTIERREZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SACRAMENTO; OFFICER JONATHON NANGLE (385); OFFICER MICHAEL CASE (667); OFFICER COREY STACKHOUSE (1033); SERGEANT JOHN MORRIS (3120); and DOES 1 to 5,<br><br>Defendants. | Case No.: 2:22-cv-00802-KJM-JDP<br><br>DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION OF ISSUES<br><br>Date:         March 31, 2023<br>Time:         10:00 a.m.<br>Courtroom: 3<br>Judge:        Hon. Kimberly J. Mueller |

 Defendants submit this Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

I.

ARGUMENT

A. THE STOP OF MS. RUVALCABA'S VEHICLE WAS LAWFUL AS SHE WAS ON FORMAL SEARCHABLE PROBATION AT THE TIME OF THE STOP

 Plaintiff claims that Defendants failed to submit competent evidence that Erika Ruvalcaba

1

was on formal searchable probation at the time Defendants made the stop of her vehicle on November 19, 2021. In response thereto, Defendants submit herewith a declaration of Defendant Jonathon Nangle with exhibits attached to clearly demonstrate what Officer Nangle viewed to determine that she was, in fact, on formal searchable probation.

While in the patrol vehicle, Officer Nangle accessed the Sacramento Known Persons Finder (WEBKPF) database which revealed to him that Ms. Ruvalcaba was on formal searchable probation as of January 29, 2021, related to a felony conviction for Robbery. Her probation term and status was ongoing until January 28, 2026.

Thus, based on the terms of her probation, neither reasonable suspicion nor probable cause was needed to stop and search her, or the contents located within her vehicle. It is undisputed that the vehicle was registered to her and that she was driving at the time of the stop. As such, based on her probation status, the stop of the vehicle made by the Defendant officers was lawful.

B. THE CONSENT TO SEARCH MS. RUVALCABA'S VEHICLE AND THE CONTENTS THEREOF WAS "VOLUNTARY" DUE TO HER PROBATION STATUS

Pursuant to the terms of Ms. Ruvalcaba's probation status, she had no right to deny consent to a search at any time. By accepting the terms of her probation, she is in essence, "volunteering" to be searched at any time.

The United Supreme Court has held that any voluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant. *U.S. v. Matlock*, 415 U.S. 164, 169-170 (1974). If this holds true for a home, where the expectation of privacy is at its greatest, it must also therefore be true for the search of a vehicle. *Payton v. New York*, 445 U.S. 573, 585 (1980). The expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). Both drivers and passengers have a reduced expectation of privacy in the interior of a car and its contents because cars "trave[l] public thoroughfares,' *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974). It has been further held that a passenger who does not exercise

control over the car "has no reasonable expectation of privacy in a car that would permit [his] Fourth Amendment challenge to a search of the car." *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir.2000).

Warrantless searches have been held valid where an officer reasonably believes that a probationer exercises "common authority." *U.S. v. Matlock, supra,* at 171, fn. 7. "The authority which justifies the third-party consent ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.*

Whether a search is reasonable within the meaning of the Fourth Amendment depends on the totality of the circumstances. *Samson v. California,* 547 U.S. 843, 848 (2006). This test includes an assessment of the degree to which a search promotes legitimate governmental interests, balanced against the degree to which it intrudes upon an individual's privacy. *Id.* The United States Supreme Court has employed traditional standards of reasonableness to evaluate the constitutionality of warrantless vehicle searches and parole and probation searches. *Id.* It has been held that such searches are deemed reasonable with a "salient circumstance" being the presence of a probation subject to a search condition. *Id.*

It is of no consequence that Plaintiff was not on probation himself or even if he knew Ms. Ruvalcaba was on probation. *United States v. Jacobsen*, 466 U.S. 109, 117 (1984). The only limitation placed on the searching officers is that the search cannot be conducted in an arbitrary, capricious or harassing manner. *Samson, supra*, at 856.

Because of their release into society probationers have an even greater "incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal." *United States v. Knights*, 534 U.S. 112, 120 (2001). Warrantless, suspicionless probation searches are a vital part of probation supervision. *Samson, supra,* at 854.

/ / /

Moreover, the law does not presume that one occupant of the vehicle has nothing to do with items located elsewhere in the passenger compartment of a car. In *Maryland v. Pringle* (540 U.S. 366 (2003), a police officer conducting a routine traffic stop obtained the driver's consent to search the car. He located a large sum of cash in the glove box and five plastic baggies containing cocaine hidden behind the backseat armrest. Upon questioning, the driver and two passengers declined to say who owned the drugs or money. *Id.* at pp. 368–369. Observing that the baggies of cocaine were in an area "accessible" to all three passengers, the court found it "an entirely reasonable inference from these facts that any or all three of the occupants [including the front seat passenger] had knowledge of, and exercised dominion and control over, the cocaine," thus justifying their arrests. *Id.* at p. 372.

Here, it cannot be disputed that that Ms. Ruvalcaba had access to the backpack as it was situated in the front seat with Plaintiff and he exited the vehicle with the backpack. It was entirely reasonable for the Defendants to believe that she could have placed the gun in the backpack or that it was her gun that Plaintiff was trying to conceal. Therefore, pursuant to the terms of Ms. Ruvalcaba's probation, the totality of the circumstances, and the state of the law as established by the United States Supreme Court, the search of Plaintiff's backpack was undoubtably lawful and therefore the Defendants must be granted qualified immunity as a matter of law.

## II.
## CONCLUSION

For the foregoing reasons, and for those set forth in the moving papers, Defendants respectfully request that the Court grant Defendants' Motion For Summary Judgment.

DATED: March 13, 2023

SUSANA ALCALA WOOD,
City Attorney

By: /s/ SEAN D. RICHMOND
SEAN D. RICHMOND
Senior Deputy City Attorney
Attorneys for the CITY OF SACRAMENTO, OFFICER JONATHON NANGLE (385), OFFICER MICHAEL CASE (667), OFFICER COREY STACKHOUSE (1033), and SERGEANT JOHN MORRIS (3120)